UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION AT COVINGTON

CRIMINAL ACTION NO. 2:23-cr-26 DLB-CJS

UNITED STATES OF AMERICA                                               PLAINTIFF

v.

DALTON SAMUEL BROOKS                                                 DEFENDANT

**ELECTRONICALLY FILED**
**MOTION TO DISMISS**

Comes now the Defendant, DALTON SAMUEL BROOKS, by and through counsel and hereby moves the Court for an Order Dismissing Count 1 and 2 of the Indictment.

The prosecution of Dalton Samuel Brooks for violating 18 U.S.C. § 922(g)(1) is barred by the Second Amendment. Our Nation's historical tradition of firearm regulation does not include such powers for the federal government, and those present during the Founding era did not understand the federal government to have authority to regulate firearms. Moreover, even if the Court disagrees with that proposition, our Nation's historical tradition of firearm regulation is not consistent with Brook's prosecution, because felon-in-possession firearm prohibitions did not appear until the 20th century and because Brooks is a nonviolent felon. Accordingly, the indictment should be dismissed.

**Statement of the Case**

**The Charges**

The indictment charges defendant Dalton Samuel Brooks with violating 18 U.S.C. § 922(g)(1) by possessing a firearm following a prior conviction subject to punishment or more than one year imprisonment. Indictment, R. 1. He is also charged with a violation of 26

U.S.C.§5861(d) with a failure to register a firearm with an overall length of less than 26" and a barrel less than 18".

**Brooks Prior Nonviolent Felony Convictions:**

Brooks has two felony convictions out of Brown County Ohio. He was convicted of the Failure to Comply with Officer and Aggravated Trafficking in Drugs in 2019. Brooks is a non-violent felon.

**Argument**

**The Second Amendment bars prosecuting Brooks, a nonviolent felon, for violating 18 U.S.C. § 922(g)(1)**

   A. Introduction

The Supreme Court's decision in *New York St. Rifle & Pistol Ass'n v. Bruen*, 142 S.Ct. 2111 (2022), upended Second Amendment law and established that the constitutionality of a state or local law restricting or impacting an individual's possession of a firearm turns on whether it is of a type, for purposes of this case, widely and well established not later than by the adoption of the Bill of Rights in 1791. In other words, the inquiry here is a historical one: "'Constitutional rights are enshrined with the scope they were understood to have *when the people adopted them*.' The Second Amendment was adopted in 1791; the Fourteenth in 1868." *Bruen*, 142 S.Ct. at 2136 (citation omitted).

The test that we set forth in [*District of Columbia v*.] *Heller* [554 U.S. 570 (2008)] and apply today requires courts to assess whether modern firearms regulations are consistent with the Second Amendment's text and historical understanding. In some cases, that inquiry will be fairly straightforward. For instance, when a challenged regulation addresses a general societal problem that has persisted since the 18th century, the lack of a distinctly similar historical regulation

addressing that problem is relevant evidence that the challenged regulation is inconsistent with the Second Amendment. Likewise, if earlier generations addressed the societal problem, but did so through materially different means, that also could be evidence that a modern regulation is unconstitutional. And if some jurisdictions actually attempted to enact analogous regulations during this timeframe, but those proposals were rejected on constitutional grounds, that rejection surely would provide some probative evidence of unconstitutionality.

*Bruen*, 142 S. Ct. at 2131.

**B. The Second Amendment**

The Second Amendment provides as follows:

> A well regulated Militia, being necessary to the security of a free State, *the right of the people* to keep and bear Arms, shall not be infringed. U.S. Const. amend. II.

The Second Amendment recognizes an individual right. "There seems to us no doubt, on the basis of both text and history, that the Second Amendment conferred an individual right to keep and bear arms." *District of Columbia v. Heller*, 554 U.S. 570, 595 (2008). The text of the Second Amendment does not except those with any prior felony convictions or other civil disabilities. This absence is "echoed in state constitutional provisions" as "[o]nly one state constitutional provision addressing the right to bear arms contains an exception for felons[,]" this being Idaho's enacted in 1978. C. Larson, *Four Exceptions in Search of a Theory: District of Columbia v. Heller and Judicial Ipse Dixit*, 60 Hastings L.J. 1371, 1375 (2009)(Larson, *Four Exceptions*).[1] "We start therefore with a strong presumption that the Second Amendment right is exercised individually and belongs to all Americans." *Heller*, 554 U.S. at 581.

---

[1] Accessible and downloadable at https://repository.uchastings.edu/hastings_law_journal/vol60/iss6/7/#.

**C. The *Bruen* standard**

After repeatedly lamenting the Second Amendment's "second-class" status,[2] Justice Thomas's opinion for the Court in *Bruen* elevates it to the top-most echelon of American liberties. At issue in *Bruen* was a New York law that required an individual to petition for and show "proper cause" for a permit to carry a firearm in public. The particulars of the process, and the Court's analysis of its deficiencies are of little moment here. Far more important is Court's bull-dozing of the two-step analytical process for Second Amendment-based challenges that had been widely adopted following the Court's earlier Second Amendment cases, *Heller, supra* and *McDonald v. City of Chicago,* 561 U.S. 742 (2010).[3]

This two-step process derogated the Second Amendment to "second-class "status, and the Court concluded was "one step too many." *Id*. at 2127."Instead,the government must affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Id*. Text and history, the Court reiterated,[4] are the guides:

---

[2] *Silvester v. Becerra*, 138 S.Ct. 945, 945, 950 (2018)(Thomas, J., dissenting from denial of certioriari)("the Second Amendment is a disfavored right in this Court" and "the lower courts are resisting this Court's decisions in *Heller* and *McDonald* and are failing to protect the Second Amendment to the same extent that they protect other constitutional rights."); *Friedman v. City of Highland Park*, 136 S.Ct. 447, 450 (2015)(Thomas & Scalia, JJ., dissenting from denial of certiorari)("I would grant certiorari to prevent the Seventh Circuit from relegating the Second Amendment to a second-class right.").

[3] The Sixth Circuit had its version of this two-step process. *See United States v.Greeno*,679 F.3d 510 (6th Cir.),*cert. denied*,568 U.S. 922(2012).

[4] The Court stated earlier in its opinion: "In keeping with *Heller*, we hold that when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct." 142S.Ct.at 2126.

> When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearms regulation. Only then may a court conclude that the individual's conduct falls outside the Second Amendment's "unqualified command."

142 S.Ct. at 2129-30, *quoting Konigsberg v. State Bar*, 366 U.S. 36, 50 (1961).

**D. The Second Amendment's plain text covers Brook's charged conduct**

The plain text of the Second Amendment covers Brook's charged conduct of possessing a firearm, at any length of the firearm. First, it can't be disputed seriously that possessing a firearm is to "keep and bear arms[.]" "[T]he most natural reading of 'keep arms' was simply a common way of referring to possession of arms, for militiamen *and everyone else*." *Id*. at 583 (emphasis in original).

The Second Amendment's guarantee, therefore, applies to Brook's charged possession of the firearm. The government has consistently argued, in response to motions such as Brook's, that felons are excepted from "the people" covered by the Second Amendment. We turn now to that analysis.

**(1) Brooks is among "the people" covered by the Second Amendment**

The Supreme Court identified in *Heller* "the people" referred to in the Second Amendment. The Court observed that both the First and Fourth Amendment refer identically to "the right of the people[.]" *Id*. at 579. Very similarly, the Ninth Amendment refers to "certain rights … retained by the people." *Id*. Three other constitutional provisions refer to "the people": "the famous preamble ('We the people'), § 2 of Article I (providing that 'the people' will choose members of the House), and the Tenth Amendment (providing that those powers not given the Federal Government remain with "the States" or 'the people')." *Id*. In all of these references,

"the people … unambiguously refers to all members of the political community, not an unspecified subset." *Id*. at 580.

The presumption of consistent usage ties these references together; it posits that "[a] word or phrase is presumed to bear the same meaning throughout a text." Antonin Scalia & Bryan A. Garner, *Reading Law:* The *Interpretation of Legal Texts* 170 (2012). In *Heller*, the Court quoted a prior case that emphasized the common meaning of "the people" referenced in the First, Second, Fourth, Ninth and Tenth Amendments:

" '[T]he people' seems to have been a term of art employed in select parts of the Constitution .... [Its uses] sugges[t] that 'the people' protected by the Fourth Amendment, and by the First and Second Amendments, and to whom rights and powers are reserved in the Ninth and Tenth Amendments, refers to a class of persons who are part of a national community or who have otherwise developed sufficient connection with this country to be considered part of that community." 554 U.S. at 580, *quoting United States v. Verdugo-Urquidez*, 494 U.S. 259, 265 (1990).

This discussion yielded the "strong presumption that the Second Amendment right is exercised individually and belongs to all Americans." *Heller,* 554 U.S. at 581. Put most plainly an individual with a felony conviction is as much a part of "the people" covered by the Second Amendment as "the people" covered by the First and Fourth Amendments.

The Sixth Circuit recognized in *Tyler v. Hillsdale Co. Sheriff's Dept.*, 837 F.3d 678, 686 (6th Cir. 2016)(*en banc*), that *Heller* allowed an as-applied challenge to § 922:

While we "are obligated to follow Supreme Court dicta," *United States v. Marlow*, 278 F.3d 581, 588 n.7 (6th Cir. 2002) (citation omitted), *Heller* only established a presumption that such bans were lawful; it did not invite courts onto an analytical off-ramp to avoid constitutional

analysis. A presumption implies "that there must exist the possibility that the ban could be unconstitutional in the face of an as-applied challenge." *United States v. Williams*, 616 F.3d 685, 692 (7th Cir. 2010) This ruling, which is not contrary to any holding in *Bruen*, supports Brook's as-applied challenge here, something he could not do, if as a convicted felon, he were excepted from "the people" covered by the Second Amendment. *Tyler* provides a clear basis for the Court to conclude that Brooks is among "the people" covered by the Second Amendment.

Beyond these authorities, the Third Circuit *en banc* and two divisions of this Court have ruled that an individual with felony convictions is, nevertheless, among "the people" covered by the Second Amendment. *Range v. Attorney General*, 69 F.4th 96 (3rd Cir. 2023)(*en banc*); *United States v. Combs*, 2023 WL 1466614 (E.D. Ky. 2/2/23); *United States v. Goins*, __ F.Supp.3d __, 2022 WL 17836667 (E.D. Ky. 12/21/22). This Court should also conclude that Brooks is among "the people" covered by the Second Amendment.

**E. Firearm regulation by the federal government did not commence until the 20th century and Americans of the Founding era understood such power to reside with states and localities**

The concurring opinion of Judge Porter in *Range v. Attorney General, supra,* observes that the federal government was not understood to have any power to regulate firearms and that the Second Amendment's categorical bar – the right of the people … shall not be infringed – was a redundancy to the Ninth and Tenth Amendments. 69 F.4th at 108.

In terms of the historical traditions and understanding during the Founding era of the federal government's power to regulate firearms, "[u]ntil well into the twentieth century, it was settled that Congress lacked the power to abridge anyone's right to keep and bear arms." *Range*, Porter, J., concurring, 69 F.4th at 106. "Even without the Second Amendment, the combination

of enumerated powers and the Ninth and Tenth Amendments ensured that Congress could not permanently disarm anyone." *Id*. at 107. The Federalist Papers and a Founding era constitutional law treatise further point to a tradition and understanding that firearm regulation was a matter for the states, not the federal government. *Id*. at 106-107.

The distinction between federal government authority and that of the states to regulate firearms has not been addressed by the Supreme Court. If our Nation had no federal firearm regulation until well into the 20th century, which is a fact, the teachings of *Bruen* tell us that our Nation's historical tradition of firearm regulation does not recognize any power for the federal government to regulate firearms. Therefore, the indictment should be dismissed.

**F. Felon-in-possession laws like § 922(g)(1) are not part of our country's historical tradition of firearm regulation**

Statutes prohibiting felons from possessing firearms did not appear until the 20th century. "[S]tate laws prohibiting felons from possessing firearms or denying firearms license to felons date from the early part of the twentieth century" Larson, *Four Exceptions*, 60 Hastings L.J. at 1376. "[O]ne can with a good degree of confidence say that bans on convicting possessing firearms was unknown before World War I." C.K. Marshall, *Why Can't Martha Stewart Have a Gun?* 32 Harv. J.L & Pub. Pol'y 695, 708 (2009)(Marshall, *Martha Stewart*).[5]

Founding-era laws, statutes or ordinances prohibiting felons from possessing firearms would be the best evidence of a "historical tradition of firearm regulation" consistent with § 922(g)(1), but "scholars have not been able to identify any such laws." *Kanter v. Barr*, 919 F.3d 437, 454 (7th Cir. 209)(Barrett, J., dissenting). "[N]o colonial or state law in eighteenth century

---

[5] Accessible and downloadable at https://www.harvard-jlpp.com/wp-content/uploads/sites/21/2009/03/marshall_final.pdf.

America formally restricted the ability to own firearms." Larson, *Four Exceptions* at 1374. "In sum, felon disarmament laws significantly postdated both the Second Amendment and the Fourteenth Amendment." *Id*. at 1376.

Notwithstanding the absence of any actual laws or statutes from either the founding-era or the 19th century that prohibited felons from possessing firearms, some courts and authorities have claimed that felons have historically been excluded from possessing firearms. Justice Barrett, then a member of the Seventh Circuit, examined these contentions in her dissent in *Kanter v. Barr*, *supra.* This review shows that "[h]istory does not support the proposition that felons lose their Second Amendment rights solely because of their status as felons." Barrett dissent in *Kanter v. Barr* at 464.

The first of these supposed authorities is discussions by three state conventions during the Constitution's ratification process of proposals including language limiting the Second Amendment's scope "arguably tied to criminality." *Id*. at 454. New Hampshire's convention recommended that citizens "in actual rebellion" be disarmed. *Id*., *quoting* 1 Jonathan Elliot, The Debates in the Several State Conventions of the Adoption of the Federal Constitution 326 (2d ed. 1891); *see also* J. Greenlee, *The Historical Justifications for Prohibiting Dangerous Persons from Possessing Firearms*, 20 Wyoming L. Rev. 249, 266 (2020);13 Marshall, *Martha Stewart*, 32 Harv. J.L & Pub. Pol'y at 713. Samuel Adams proposed to the Massachusetts convention that only "peaceable citizens" would retain the right to bear arms. Barrett dissent in *Kanter v. Barr* at 454. Finally, a minority of the Pennsylvania convention came closest with a proposal that those convicted of a dangerous crime and/or otherwise posing a public danger be disarmed. *Id*. at 454-55.[6]

---

[6] Accessible and downloadable at tps://scholarship.law.uwyo.edu/cgi/viewcontent.cgi?article=1434&context=wlr.

Similar to the one-time and thoroughly discredited notion that the absence of any evidence of weapons of mass destruction in Saddam Hussein's Iraq constituted conclusive proof of their existence, these proposals offer not even a thin reed of support, since "none of their relevant limiting language made its way into the Second Amendment." *Id*. at 455. Only New Hampshire's, which spoke to actual rebellion, even passed its convention. *Id*. Furthermore, the stronger evidence goes the other way: proposals from the other states did not include any similar language of limitation or exclusion and four parallel state constitutional provisions enacted before ratification of the Second Amendment did not include any similar limitations or exclusions. *Id*. Proposals discussed but not adopted or enacted cannot establish a historical tradition of firearm regulation.

A second unfounded contention in response "to the dearth of felon-disarmament laws in the eighteenth and nineteenth centuries is to say that such laws would have been unnecessary given the severity with which felons were punished." *Id*. at 458. This argument posits that felons were routinely executed or stripped of all rights and, therefore, explicit provisions depriving them of firearms would have been redundant. *Id*. Justice Barrett concludes, after a historical survey, that "history confirms that the basis for the permanent and pervasive loss of all rights cannot be tied generally to one's status as a convicted felon or to the uniform severity of punishment that befell the class. *Id*. at 461.

A third contention has been that the right to bear arms was similarly limited by a requirement that they be afforded only to "virtuous citizens." *Id*. at 462. The "virtuous citizen" theory posits that felony convictions lead to disqualification of rights like voting and serving on juries and, it would follow, also to bear arms. *Id*. Again, however, a rigorous historical review shows that "the right to arms differs from rights that depend on civic virtue for enjoyment" and

"that difference is borne out by historical treatment: we see no explicit criminal, or even more general virtue-based, exclusions from the right to bear arms like we do in other contexts." *Id*. at 464.

Justice Barrett's dissent in *Kanter v. Barr* simply and accurately recites our Nation's historical tradition of states and localities disarming violent persons, not nonviolent felons. Even if this Court were to conclude that the federal and state governments possess effectively or functionally equivalent power to regulate firearm possession by some individuals, those powers do not reach to nonviolent felons such as Brooks.

District Judges are being presented this question throughout the United States. The most comprehensive is from Judge Carlton Reeves, United States District Court Southern District of Mississippi in *U.S. v. Bullock, No. 3:18_CR-165-CWR-FKB*. In a 77 page opinion he goes through the analysis required for review of 2nd Amendment challenge. After addressing what analysis is require he dismissed the case.

Brooks is also charged with failing to register a firearm with a modified length. Because Brooks would have been unable to register any firearm in his name as a result of his prior felony conviction it was impossible to comply with registering this firearm. The prohibition of possession of unregistered firearms is likewise not rooted in the Second Amendment's text and history. The Second Amendment provides the people the right to possess firearms and any restriction, including registration based on the statute charged is unconstitutional in the same manner as outlined above for a charge of felon in possession. Consequently, this Count of the indictment should likewise be dismissed.

## CONCLUSION

History teaches that the federal government was not considered to possess power to disarm anyone at the time of our Nation's founding and did not assert any such power until well

into the 20th century. Laws prohibiting felons from possessing firearms did not become part of this Nation's historical tradition of firearm regulation until the 20th century. As such and in accordance with the teachings in *Bruen*, 18 U.S.C. § 922(g)(1) and §5861 as applied to Brooks must yield to his rights secured by the plain, unambiguous text of the Second Amendment. The indictment, accordingly, should be dismissed.

## NOTICE

The foregoing Motion shall be heard at the convenience of the Court.

STEVEN N. HOWE, P.S.C.

__S/Howe_____
STEVEN N. HOWE
Attorney for Defendant Dalton Samuel Brooks
507 North Main Street
Williamstown KY 41097
(859) 824-0500 telephone
(859) 824-0555 facsimile
stevenhowe@howeattorney.com

## CERTIFICATE OF SERVICE

On July 24, 2023  I electronically filed this document through the ECF system, which will send a notice of electronic filing to: Kyle Winslow, AUSA Office, 207 Grandview Drive, Ft. Mitchell KY 41017.

__S/Howe_____
STEVEN N. HOWE